| | |  |
|---|---|---|
| **U.S. Department of Labor** | Office of Administrative Law Judges<br>William S. Moorhead Federal Office Building<br>1000 Liberty Avenue, Suite 1800<br>Pittsburgh, PA 15222 | |

(412) 644-5754
(412) 644-5005 (FAX)

**Issue Date: 25 April 2011**

CASE NO.:    2010-STA-44

In the Matter of:

LARRY BRICCO
    Complainant

v.

JHT LOGISTICS, INC.
    Respondent

APPEARANCES:

Paul O. Taylor, Esq.
    For the Complainant

Jay E. Heit, Esq.
    For the Respondent

### DECISION AND ORDER

This case arises under Section 405 of the Surface Transportation Assistance Act of 1982 (the STAA), as amended and recodified, 49 U.S.C. § 31105, and its implementing regulations at 29 CFR Part 1978. A hearing was held before the undersigned in Minneapolis, Minnesota on January 27, 2011. At the hearing Complainant's exhibits (CX) 1-7 and Respondent's exhibits (RX) A-E and G were admitted into evidence. RX H, the deposition testimony of Brad Matson, was submitted after the hearing and has been made part of the record. Briefs were due on March 28, 2011 and both parties filed timely briefs.

### Stipulations

The parties have stipulated that:

1. Complainant Larry Bricco resides in Clintonville, Wisconsin;
2. Respondent JHT Logistics, Inc. is engaged in interstate trucking operations and is subject to the jurisdiction of the STAA;
3. Jeremy Hoffman is the president and sole shareholder of Respondent;
4. Complainant was an employee of Respondent from May 28, 2008 to May 14, 2009;

**Exhibit A**

5. As an employee of Respondent Complainant operated commercial motor vehicles weighing at least 10, 001 pounds on the highways in interstate commerce;
6. On May 14, 2009, Hoffman discharged Complainant;
7. Complainant last worked for Respondent on May 1, 2009;
8. Complainant filed a complaint with the Secretary of Labor alleging that Respondent had discriminated against him in violation of the employee protection provisions of the STAA;
9. The Secretary of Labor issued preliminary findings and an order on April 26, 2010;
10. On May 3, 2010, Complainant filed a timely objection to the Secretary's findings and order;
11. The United States Department of Labor, Office of Administrative Law Judges, has jurisdiction in this proceeding.

### Issue

Did Respondent discriminate against Complainant in violation of the employer protection provisions of the STAA?

### Findings of Fact

Respondent is a trucking company that primarily hauls refrigerated goods. (TR 18). Hoffman testified that he made the decision to discharge Complainant. Id. Complainant complained to Hoffman in August 2008 that the truck he was assigned had a cracked windshield and stated that if the windshield was not repaired he would take it to Department of Transportation (DOT) scale and have it put out of service. (TR 22-23, 115-116). Hoffman had the windshield repaired. (TR 115-116). Complainant's complaint about the cracked windshield was a contributing factor in Hoffman's decision to fire Complainant. (TR 23). Complainant made a complaint in September 2008 to Hoffman and to Brad Matson, Respondent's mechanic, about a loose U-joint in his truck.[1] Matson discovered that the U-joint was becoming worn and greased it. (TR 24). Hoffman testified that Complainant's complaint about the worn U-joint did not play a role in his decision to fire Complainant "at that time". (TR 25-26). Complainant also complained about the speedometer in his truck which was not properly calibrated. (TR 27-28, 117-118). Hoffman admitted that the complaint about the speedometer was "a motivating factor" in his decision to fire Complainant. (TR 28).

Complainant complained to Hoffman about the engine in his truck overheating. (TR 31, 119). He reported that every time he climbed a hill the red engine light went on and he had to pull off to the side of the road to let the engine cool. (TR 119). This complaint was also a contributing factor in Hoffman's decision to discharge Complainant. (TR 35-36). On several occasions Complainant complained to Hoffman and Matson about the clutch on his truck not engaging or disengaging properly. (TR 38, 122). Respondent adjusted the clutch but the problems recurred. (TR 12).[2] The truck would lurch forward when it was stopped for a traffic

---

[1] Matson is employed by Red Oval Repair which shares a common facility with Respondent and is owned by Hoffman. (TR 74).
[2] Matson inspected the truck and concluded that Complainant's complaints about the clutch were unfounded. (RX B).

**Exhibit A**

light and when the truck was in reverse and the clutch was released the truck would start jumping. (TR 124). Complaints were also made by Complainant two or three months before his termination that the tilt steering wheel mechanism was springing forward which made it difficult to steer. (TR 39-40). Complainant complained to Hoffman about an air bag that leaked and to Matson regarding a fuel leak on his vehicle. (TR 95, 118).

After returning from a trip on May 1, 2009, Complainant filled out a Driver's Vehicle Inspection Report on his driver's log regarding the tilt steering wheel disengaging and the clutch not engaging properly and told Tanya, Respondent's dispatcher, that he would not drive the truck until repairs were made. (CX 3, TR 44-45). Matson testified that he readjusted the clutch and found that the problem with the tilt steering system was caused by dog hair. (TR 81, 85. RX B). In a statement dated December 13, 2009 (CX 6), Tim Hoyt, a part-time driver for Respondent, averred that he drove Complainant's vehicle 5000 miles in May 2009 and that "[f]or a truck with that mileage the clutch worked fine." The steering wheel did move on Hoyt twice but when he took the cover off he found that it was full of dog hair and after he cleaned it out he never had a problem with it moving. Id. Hoffman testified that Complainant's complaints about the clutch and the tilt steering mechanism and his refusal to drive the truck were contributing factors in his decision to discharge Complainant. (TR 40-41, 45).

On January 31, 2009, Complainant was dispatched to transport a load from Green Bay Wisconsin to Kansas City, Missouri. (TR 46, 128-129). Due to weather conditions Complainant was forced to shut down in De Witt, Iowa because if he had completed the trip to Kansas City he would have violated the DOT regulation that a driver is only allowed to drive seventy hours in an eight day period and then must take a ten hour break. (TR 46-47, 129-131). When he was forced to shut down in De Witt, Iowa Complainant immediately informed Hoffman who was angry and wanted Complainant to complete the trip. (TR 131-132). Hoffman asserted, however, that it was Complainant's failure to communicate to him that he was unable to complete the trip that was a contributing factor in his decision to fire Complainant. (TR 47). In CX 2, an unsigned statement explaining the January 31, 2009 incident, Respondent reported that Complainant told Hoffman on Saturday January 30 that he would have eleven hours available to drive on Sunday, January 31, but on Sunday Complainant informed Hoffman that he was out of hours after nine and one quarter hours which ended his trip in De Witt, Iowa. After the January 31 incident Hoffman told Complainant that the next incident would be the "final straw" with respect to his job with Respondent. (TR 49).

Hoffman contended that he received numerous customer complaints about Complainant. (TR 181). Packerland, which was later purchased by Smithfield Beef, complained that Complainant allowed his two dogs on their property which was against company policy. Id. (Complainant is a volunteer for Independence Canine Search and Rescue and traveled with two specially-trained search and rescue German Shepherds. [TR 154-155]). Roundy's made similar complaints. (TR 184). Service Transportation complained that Complainant was not maximizing loads, Hudson Company stated that Complainant would not follow routing instructions, and Brakebrush Brothers and Northstar Produce complained that Complainant was not making connections. (TR 185-191). See also TR 55-65, CX 5. Hoffman testified that Hudson's complaint in late April 2009 was the "deal breaker". Complainant testified that he never received any disciplinary write-ups regarding customer complaints. (TR 137). Hoffman averred

Exhibit A

that customer complaints was the major reason he fired Complainant and that Complainant's traffic tickets and communication issues with him and his dispatcher were also factors in his decision to discharge Complainant. (TR 205-206). However in a statement prepared on May 15, 2009, the day after Complainant was fired, Respondent declared that Complainant was fired due to his refusal to drive his assigned truck based on the reasons noted on his driver's log of May 1, 2009. (CX 4). "Another reason that (Hoffman) fired (Complainant) was that (Complainant) had been complaining to our customers, (Hudson Trucking)." Id.

Since his discharge Complainant's savings have declined from $25,000 to $2000. (TR 139). He has been living in a camper since November 1, 2010. (TR 110). His discharge has caused him emotional, financial, and physical stress and insomnia but he is not being treated for any mental health problems. (TR 140, 160). Since he was fired Complainant has made numerous efforts to find work as a truck driver and has submitted employment applications to over fifty trucking companies without success. (TR 141-144). He has also sought employment as a meat cutter. (TR 144).

## Conclusions of Law

*Legal Standards*

This case arises under "The Implementing Recommendations of the 9/11 Commission Act of 2007" signed into law on August 3, 2007. They provide, as pertinent, that the STAA prohibits a person from discharging, disciplining, or discriminating against:

> "an employee... regarding pay, terms, or privileges of employment, because-
> (A)(i) the employee, or another person at the employee's request, has filed a complaint or begun a proceeding related to a violation of a commercial motor vehicle safety or security regulation, standard, or order, or has testified or will testify in such a proceeding; or (ii) the person perceives that the employee has filed or is about to file a complaint or has begun or is about to begin a proceeding related to a violation of a commercial motor vehicle safety or security regulation, standard, or order;
> (B) the employee refuses to operate a vehicle because – (i) the operation violates a regulation, standard, or order of the United States related to commercial motor vehicle safety, health, or security; or (ii) the employee has a reasonable apprehension of serious injury to the employee or the public because of the vehicle's hazardous safety or security operation;

49 U.S.C.A. § 31105(a)(1). Subsection 31105(b) provides that "complaints under this section shall be governed by the legal burdens of proof set forth in section 42121(b) "which is under the Wendell H. Ford Aviation Investment and Reform Act for the 21st Century (AIR 21), 49 U.S.C.A. § 42121 (Thompson/West 2007). AIR 21 provides that the Secretary may determine that a violation has occurred only if the complainant demonstrates that any protected activity was a contributing factor in the unfavorable action alleged in the complaint. 49 U.S.C.A. § 42121 (b)(2)(B)(iii). AIR 21 further states that relief may not be ordered if the employer demonstrates

**Exhibit A**

by clear and convincing evidence that the employer would have taken the same unfavorable personnel action in the absence of that behavior. 49 U.S.C.A. § 42121(b)(2)(B)(iv). Thus the burdens of proof follow the burdens of proof that are used in AIR 21 cases. *Williams v. Domino's Pizza*, ARB No. 09-092, ALJ No. 2008-STA-052, slip op. at 6 (ARB Jan. 31, 2011).

To prevail on an STAA complaint, complainant must prove by a preponderance of the evidence that he engaged in protected activity, that the employer was aware of the protected activity and took an adverse employment action against him, and that the protected activity was a contributing factor in his unfavorable personnel action. *Peters v. Renner Trucking & Excavating*, ARB No. 08-117, ALJ No. 2008-STA-030, slip op. at 4 (ARB Dec. 18, 2009); *Sievers v. Alaska Airlines, Inc.*, ARB No. 05-109, ALJ No. 2004-AIR-028 (ARB Jan. 30, 2008).

A contributing standard is "any factor which alone, or in connection with other factors, tends to affect in any way the outcome of the decision." *Sievers*, slip op. at 4. A complainant can succeed by providing either direct or indirect proof of contribution. *Id.*. Direct evidence is "smoking gun" evidence that conclusively links the protected activity and the adverse action and does not rely upon inference. *Id* at 4-5. If the complainant does not produce direct evidence, he must proceed indirectly, or inferentially, by proving by a preponderance of the evidence that retaliation was the true reason for terminating his employment. One type of circumstantial evidence is evidence that discredits the respondent's proffered reasons for the termination, demonstrating that they were a pretext for retaliation.[3] *Reiss v. Nucor Corp.*, ARB 08-137, 2008-STA-011, slip op. at 6 (ARB Nov. 30, 2010). If the complainant proves pretext, I may infer that his protected activity contributed to his termination, although I am not compelled to do so. *Id.* See also *Reeves v. Sanderson Plumbing Products*, 530 U. S. 133 (2000).

If the complainant has proven discrimination by a preponderance of the evidence, the employer may avoid liability if it "demonstrates by clear and convincing evidence" that it would have taken the same adverse action in any event. *Id.* (citing 49 U.S.C.A. § 42121(b)(2)(B)(iv); 29 C.F.R. § 1979.109(a) Clear and convincing evidence is "[e]vidence indicating that the thing to be proved is highly probable or reasonably certain" *Brune v. Horizon Air Indus., Inc.*, AIR No. 04-037, ALJ No. 2002-AIR-008, slip op. at 14 (ARB Jan 31, 2006) (citing BLACK'S LAW DICTIONARY at 577.).

*Protected Activity*

Complainant made complaints to Hoffman and/or Matson about (1) a cracked windshield, (2) a loose U-joint, (3) an improperly calibrated speedometer, (4) the engine overheating, (5) the clutch not engaging or disengaging properly, (6) a faulty tilt steering mechanism, (7) a leaking air bag, and (8) a leaking fuel tank. See *Cefalu v. Roadway Express, Inc.*, ARB Case No. 04-103 & 04-061, ALJ No. 2003-STA-55, slip. op. at 6 (ARB Jan. 31, 2006) (Internal complaints to supervisors related to violation of commercial safety regulations are protected under 49 U.S.C. A. § 31105(a))(1)(A)(i)). *Harrison v. Roadway Express, Inc.*, ARB Case No. 00-048, ALJ No. 1999-STA-37 (ARB Dec. 31, 2002). It is immaterial that some of these complaints may have been unfounded or were corrected as protection under § 31105(a)(1) is not dependent on actually

---

[3] A complainant may also prove his case under the mixed motive analysis. *Salata v. City of Concrete, LLC*, ARB Nos. 08-101, 09-104; ALJ Nos. 2008-STA-12,- 041, slip op. at 7 (ARB Sept. 23, 2100).

Exhibit A

proving a violation of a federal safety provision but only requires that the complaints were "related to" a violation a federal safety provision. *Yellow Freight System, Inc. v. Martin*, 954 F. 2d 353, 357 (6th Cir. 1992), *Nix v. Nehi-RC Bottling Co., Inc.*, 84-STA-1 (Sec'y July 13, 1984). All of Complainant's complaints were "related to" violations of commercial safety provisions, see 49 CFR §§ 393.60(c), 392.7, 393.207, 393.82, 396.7, 396.213, 393.209, 393.207, and 393.67. Therefore I find that Complainant engaged in protected activity pursuant to § 31105(a)(1)(A)(i).

On January 31, 2009 Complainant refused to complete a trip from Green Bay, Wisconsin to Kansas City, Missouri and shut down in De Witt, Iowa because he asserted that completing the trip would violate the DOT hours of service regulations. To come within the protection of § 31105(a)(1)(B)(i) Complainant must show that an actual violation occurred; it is not sufficient that the driver had a reasonable belief about a violation. *Yellow Freight System, Inc, v. Reich*, 38 F. 3d 76 (2nd Cir. 1994). The DOT hours of service regulations at 49 CFR § 395.3(a)(2) prohibit a commercial truck driver from driving "[f]or any period after the end of the 14th hour after coming on duty following 10 consecutive hours of duty..." and at 49 CFR § 395.3(b)(2) prohibit a commercial truck driver from operating a motor vehicle after being on duty for seventy hours in eight consecutive days. Complainant was obligated to take a 10 hour break after arriving in DeWitt to avoid running afoul of these regulations. Complainant refused to complete the trip to Kansas City, Missouri because such operation violated a regulation of the United States related to commercial motor vehicle safety, and therefore his refusal constitutes protected activity under § 31105(a)(1)(B)(i).

Under § 31105 (a)(1)(B)(ii), an employee's apprehension of serious injury is reasonable only if a reasonable individual in the circumstances then confronting the employee would conclude that the hazardous safety or security condition establishes a real danger of accident, injury, or serious impairment to health. To qualify for protection, the employee must have sought from the employer, and been unable to obtain, correction of the hazardous safety or security condition. § 31105(a)(2). Complainant refused to drive his vehicle on May 1, 2009 until the tilt steering mechanism and the clutch were repaired. Although Hoyt later drove the same vehicle and stated that the clutch "worked fine" and that the steering wheel moved twice due to the presence of dog hair under the wheel cover, Complainant testified that the clutch did not engage or disengage properly and would cause the vehicle to lurch and that the tilt steering mechanism malfunctioned and made the truck difficult to steer. Therefore Complainant had a reasonable apprehension that these problems might cause an accident and serious injury. However, Complainant refused to drive the vehicle before allowing Respondent to correct the problems with the clutch and the steering mechanism and therefore he did not engage in protected activity under § 31105(a)(1)(B)(ii).

*Causation*

The evidence demonstrates that Complainant engaged in protected activity under §§ 31105 (a)(1)(A)(i) and (a)(1)(B)(i), that Respondent was aware of his protected activity, and that Respondent took an adverse employment against Complainant, *i.e.*, termination. Complainant must also prove that his protected activity was a contributing factor in his termination. *Peters, Sievers*.

Exhibit A

Hoffman testified that Complainant's complaints regarding the cracked windshield, the improperly calibrated speedometer, and the malfunctioning fuel gage, clutch, and tilt steering mechanism were contributing factors in his decision to fire Complainant. His testimony constitutes direct evidence that conclusively links Complainant's protected activity and his discharge. Although Hoffman also testified that it was not Complainant's failure to complete the trip from Green Bay Wisconsin to Kansas City, Missouri that was a contributing factor in his discharge but his failure to communicate his inability to complete the trip that was a contributing factor. Respondent's statement in CX 2 belies his testimony. In CX 2 Respondent reported that Complainant told Hoffman that he would have eleven hours available on Sunday, January 31 but later informed Hoffman that he had only nine and one quarter hours available and was forced to shut down in De Witt, Iowa. There is no reference in CX 2 to Complainant's failure to communicate with Hoffman and in fact Complainant informed Hoffman on January 29 of the hours he thought he had available on January 31. This statement only refers to the difficulties encountered by Respondent because Complainant was unable to complete the trip. The statement in CX 2 and Complainant's credible testimony that he immediately informed Hoffman that he was unable to complete the trip and that Hoffman was angry because Complainant could not complete the trip constitute direct evidence that Complainant's refusal to deliver the load in Kansas City, Missouri was a contributing factor in his discharge.

If this case were analyzed as if there were no direct evidence of discrimination, Complainant has nevertheless proven by a preponderance of the evidence that retaliation was the true reason for Respondent terminating him. Hoffman testified that customer complaints about Complainant was the major reason for discharging him and that Complainant's traffic tickets and failure to communicate with him and his dispatcher were contributing factors. The reliance on customer complaints is clearly pretextual as Complainant never received any written disciplinary warnings from Respondent, and in CX 4, written on the day after Complainant was fired and therefore more probative than Hoffman's testimony, the only reference to a customer is that Complainant had been complaining <u>to</u> customers rather than customers complaining <u>about</u> Complainant. The communication problems presumably refer to Complainant's alleged failure to inform Hoffman that he was unable to complete transportation of the load from Green Bay, Wisconsin to Kansas City, Missouri which is contrary to the evidence. Finally it defies belief that Respondent would fire Complainant for receiving two traffic tickets for having a radar detector issued four months and seven months before he was fired. The evidence shows that Respondent's proffered reasons for terminating Complainant were a pretext for retaliation, and I conclude that Complainant's protected activity was a contributing cause of his discharge. *Reiss, Reeves*.

As Complainant has proven discrimination by both direct evidence and by inference, Respondent may avoid liability only by demonstrating by clear and convincing evidence that it would have terminated him in the absence of his protected activity. *Reiss*. This is a difficult burden and Respondent has not met it. The record does not show by clear and convincing evidence that Respondent would have discharged Complainant had he not engaged in protected activity and in fact it clearly demonstrates that his protected activity was a contributing cause of his discharge. I find that Respondent has discriminated against Complainant in violation of the STAA.

Exhibit A

*Reinstatement and Damages*

Complainant seeks reinstatement, back pay, damages for mental and emotional distress, and punitive damages. Under the STAA, Complainant is entitled to automatic reinstatement to his former position with the same pay and terms and privileges of employment. 49 U.S.C.A. § 31105(b)(3)(A)(ii). An award of back pay under the STAA is not a matter of discretion but is mandated once it is determined that an employer has violated the Act. 49 U.S.C.A. § 31105(b)(3)(A)(iii). *Ass't Sec'y & Bryant v. Mendenhall Acquisition Corp.*, ARB No. 04-014, ALJ No. 2003-STA-36 (ARB June 30, 2005).

> Back pay awards to successful whistleblower complainants are calculated in accordance with the make-whole remedial scheme embodied in Title VII of the Civil Rights Act, 42, U.S.C.A. § 2000e et seq (citation omitted)... Ordinarily, back pay runs from the date of the discriminatory discharge until the complainant is reinstated or the date the complainant receives a bona fide offer of reinstatement... While there is no fixed method for computing a back pay award, calculations of the amount due must be reasonable and supported by the evidence; They need not be rendered with "unrealistic exactitude."...

*Mendenhall, supra*

Complainant worked for Respondent from May 28, 2008 until May 1, 2009. His W-2 for 2009 reflects earnings of $17,617.31 for 17.3 weeks (January 1-May 1), an average of $1018.34 a week. See CX 7. Complainant was paid 34 cents a mile and had he remained employed by Respondent his pay would have increased 1 cent per mile with each year of service. TR 70-71. On May 28, 2009, his pay would have increased to 35 cents a mile, (a 3% increase), on May 28, 2010 to 36 cents a mile (a 2.8% increase), and on May 28, 2011 to 37 cents a mile (a 2.8% increase). Complainant is therefore entitled to the following back pay award:

From May 1, 2009 to May 27, 2009- 3.85 weeks X $1018.34 per week = $3920.61
From May 28, 2009 to May 27, 2010- 52 weeks X $1048.89 per week = $54,542.28
From May 28, 2010 to April 25, 2011- 47.43 weeks X $1078.26 per week = $51,141.87.

Adding these sums I find that Complainant's total back pay award is $109,604.76. Respondent must pay Complainant $1078.26 a week beginning April 26, 2011 until he is reinstated or Complainant receives a bona fide offer of reinstatement. If Complainant is not reinstated or does not receive a bona fide offer of reinstatement by May 27, 2011, Respondent would owe Complainant $1108.45 a week (a 2.8% increase) until he is reinstated or offered reinstatement.

In its brief, Respondent raises the issue of whether Complainant has mitigated damages. Respondent's brief at 6-7. Where an employer is found to have violated the STAA and Complainant is found to be entitled to reinstatement to his former position and to back pay the burden of showing that Complainant failed to make reasonable efforts to mitigate damages is on the employer. *Johnson v. Roadway Express, Inc.*, ARB No. 99-111, ALJ No. 1999-STA-5 (ARB Mar. 29, 2000), *Polwesky v. B & L Lines, Inc.*, 90-STA-21 (Sec'y May 29, 1991). Respondent

Exhibit A

has made no effort to show that Complainant has failed to mitigate damages and Complainant testified that he has sought employment with over fifty trucking companies since his discharge and has also sought employment as a meat cutter. The employer has failed to show that Complainant has not attempted to mitigate damages.

Interest is due on back pay awards from the date of discharge to the date of reinstatement. Pre-judgment interest is to be paid for the period following a complainant's termination until the order of reinstatement. Post-judgment interest is to be paid thereafter until the date payment of back pay is made. The rate of interest is that required by 29 CFR § 20.58 (a) which is the IRS rate for the underpayment of taxes as set out in 26 U.S.C.A. § 6621. Interest is to be compounded quarterly. *See Johnson v. Roadway Express, Inc.*, ARB No. 99-111, ALJ No. 1999-STA-5 (ARB Mar. 29, 2000).

A complainant may recover an award for emotional distress. *Dutkiewicz v. Clean Harbor Environmental Services*, 1995-STA-34 (ARB Aug. 8, 1997). The amount of an award for emotional distress is usually based on amounts awarded in similar whistleblower cases. *Ass't Sec'y &. Bigham v. Guaranteed Overnight Delivery*, 95-STA-37, slip op. at 2-3 (ARB Sept. 5, 1996). Awards for emotional distress can be based solely on complainant's testimony. *Hobson v. Combined Transport, Inc.*, ARB Nos. 06-016, 06-053, ALJ No. 2005-STA-35 (ARB Jan. 31, 2008). Complainant seeks $50,000 for emotional distress and he testified that his discharge has caused him emotional and mental stress but that he is not receiving treatment for mental health problems. Complainant's testimony regarding his emotional distress resulting from his termination is rather sparse and nonspecific. Based on awards for emotional distress in similar whistleblower cases, I conclude that Complainant is entitled to damages for emotional distress of $25,000.

Relief in any action under subsection (b) may include punitive damages not to exceed $250,000. 49 U.S.C.A. § 31105(b)(3). In *Leveille v. New York Air National Guard*, ARB No. 98-079, ALJ No. 1994-TSC-3, (ARB Oct. 25, 1999) the ARB held that punitive damages may be awarded where there has been "reckless or callous disregard for the plaintiff's rights, as well as intentional violations of federal law" and that the purpose of punitive damages is "to punish [the defendant] for his outrageous conduct and to deter him and others from similar conduct in the future." Respondent discharged Complainant because he complained of eight defects in his truck that could have presented safety hazards and due to his refusal to violate the DOT hours of service regulations which are intended to preserve the safety of trucking operations. Respondent violated the STAA with callous disregard of the law and the safety of the travelling public. To deter future misconduct punitive damages of $50, 000 will be awarded.

## ORDER

IT IS ORDERED THAT JHT Logistics Inc.:

1. Reinstate Complainant to his former position with the same pay and terms and privileges of employment;
2. Pay Complainant compensatory damages in the form of back pay of $109,604.76 plus interest, and $1078.26 a week beginning April 26, 2011 until he is reinstated or receives a

Exhibit A

   bona fide offer of reinstatement and $1108.45 a week if he is not reinstated or receives a bona fide offer of reinstatement by May 27, 2011;
3. Pay complainant compensatory damages for emotional distress of $25,000;
4. Pay Complainant punitive damages of $50,000;
5. Post a copy of this Decision and Order at all of its terminals for 120 days at all places where employee notices are customarily posted and mail copies of this Decision and Order to its drivers;
6. Expunge all information pertaining to Complainant's wrongful discharge from his personnel records;

Complainant's counsel has thirty days to submit an application for attorney fees and costs and Respondent has thirty days from receipt of this application to submit a response.

*Daniel L. Leland*
DANIEL L. LELAND
Administrative Law Judge

**NOTICE OF APPEAL RIGHTS**: To appeal, you must file a Petition for Review ("Petition") with the Administrative Review Board ("Board") within ten (10) business days of the date of issuance of the administrative law judge's decision. The Board's address is: Administrative Review Board, U.S. Department of Labor, Suite S-5220, 200 Constitution Avenue, NW, Washington DC 20210. In addition to filing your Petition for Review with the Board at the foregoing address, an electronic copy of the Petition may be filed by e-mail with the Board, to the attention of the Clerk of the Board, at the following e-mail address: ARB-Correspondence@dol.gov.

Your Petition is considered filed on the date of its postmark, facsimile transmittal, or e-mail communication; but if you file it in person, by hand-delivery or other means, it is filed when the Board receives it. *See* 29 C.F.R. § 1978.110(a). Your Petition must specifically identify the findings, conclusions or orders to which you object. You waive any objections you do not raise specifically. *See* 29 C.F.R. § 1978.110(a).

At the time you file the Petition with the Board, you must serve it on all parties as well as the Chief Administrative Law Judge, U.S. Department of Labor, Office of Administrative Law Judges, 800 K Street, NW, Suite 400-North, Washington, DC 20001-8002. You must also serve the Assistant Secretary, Occupational Safety and Health Administration and, in cases in which the Assistant Secretary is a party, the Associate Solicitor, Associate Solicitor for Occupational Safety and Health. *See* 29 C.F.R. § 1978.110(a). You must file an original and four copies of the petition for review with the Board, together with one copy of this decision.

If no Petition is timely filed, the administrative law judge's decision becomes the final order of the Secretary of Labor pursuant to 29 C.F.R. §§ 1978.109(e) and 1978.110(a). Even if a Petition is timely filed, the administrative law judge's decision becomes the final order of the Secretary of Labor unless the Board issues an order within thirty (30) days of the date the Petition is filed

**Exhibit A**

notifying the parties that it has accepted the case for review. *See* 29 C.F.R. §§ 1978.110(a) and (b).

**The preliminary order of reinstatement is effective immediately upon receipt of the decision by the Respondent and is not stayed by the filing of a petition for review by the Administrative Review Board.** 29 C.F.R. § 1978.109(e). If a case is accepted for review, the decision of the administrative law judge is inoperative unless and until the Board issues an order adopting the decision, except that a preliminary order of reinstatement shall be effective while review is conducted by the Board unless the Board grants a motion by the respondent to stay that order based on exceptional circumstances. 29 C.F.R. § 1978.110(b).

**Exhibit A**